LOUIS C. HOLTHAUS, APPELLANT, V. ADAMS COUNTY ET AL., APPELLEES.

FILED NOVEMBER 11, 1905.   No. 13,953.

1. Taxation: EXEMPTIONS: PROPERTY ABANDONED FOR RELIGIOUS PURPOSES. The abandonment of property formerly used exclusively for religious and educational purposes, with the intention of never again using the property for such purposes, together with the fact that since such abandonment the property has not been used for the purposes stated, or for any other purpose that would exempt it from taxation, renders such property liable to taxation from the time of such abandonment.

2. **Tax List:** EVIDENCE. A tax list made in conformity with the provisions of the statute is *prima facie* evidence that a levy of taxes was made by the proper authorities, and is conclusive as against a claim of irregularities in making such levies.

3. **Taxes:** COLLECTION. The provisions of the revenue law of 1903, changing the method of procedure in the enforcement of the collection of taxes, are available for the collection of taxes delinquent prior to the time such revenue law went into effect.

APPEAL from the district court for Adams county: ED L. ADAMS, JUDGE. *Affirmed.*

*Tibbets Bros. & Morey,* for appellant.

*F. P. Olmstead* and *W. F. Button, contra.*

JACKSON, C.

This is an appeal from the district court for Adams county. The facts important to the inquiry are these: The order of Sisters of Visitation acquired by donation block 6 in Mumaw's addition to the city of Hastings, and erected thereon an academy building, which they used exclusively for educational and religious purposes from the year 1890 to November, 1896, when they abandoned the property with the intention of never again using it for the purpose stated. To aid in the erection of the building the order borrowed a large sum of money, and secured the payment of the same by mortgage covering said real estate. Since the abandonment of the property by the order of the Sisters of Visitation it has been unoccupied, except by a tenant of the mortgagee, who was permitted to live there without consideration, other than his services in the care of the property; the mortgagee having taken possession of the property upon its abandonment by the sisters. The plaintiff, appellant herein, succeeded to the rights of the mortgagee, and for several years made no effort to collect the debt secured by his mortgage, but finally instituted a proceeding wherein the mortgage was foreclosed, and through such proceeding acquired the legal title, which he now holds. From the years 1897 to 1902, both inclu-

sive, the assessor's books, as made up in the office of the county clerk of that county by an assistant employed in that office, contained a description of the real estate involved, and after such description the word, "exempt," written by the assistant. The assessor each year valued the property for the purpose of taxation and made due return thereof. The tax list, as made up by the county clerk each year, contained a description of the property, the valuation placed thereon by the assessor, and the several amounts of taxes, presumably corresponding with the levies made by the state, county and other municipal authorities. Opposite these entries on the tax list was written, by whom and when the record does not disclose, the word "exempt." For some of the years the mortgagee paid the tax imposed by the city of Hastings. All other taxes for those years are unpaid. At the tax sale, required by law to be held for the sale of all real property upon which taxes were delinquent, the county treasurer of Adams county, in the year 1903, offered said real estate for sale for all taxes delinquent thereon at that time, but the property was not sold for want of bidders. The word "exempt" was by some one erased from the tax lists. The plaintiff instituted this action in February, 1904, against the county of Adams, the treasurer of that county, and the city of Hastings, wherein he sought to have the taxes for the years stated decreed void, and to enjoin the defendants from attempting to enforce the collection thereof. The defendant city of Hastings interposed a demurrer to the petition, which was sustained, and the action dismissed as to that defendant. The county of Adams and its treasurer filed an answer and cross-petition, wherein they sought a foreclosure of the lien for the taxes during the controverted years. They also demurred to the plaintiff's petition. The plaintiff answered to the cross-petition. In the trial court the defendants' demurrer to the plaintiff's petition was sustained, and the cause proceeded to trial upon the cross-petition of the defendant and the answer thereto. The

trial resulted in a decree sustaining the validity of the taxes and foreclosing the lien, as prayed. Plaintiff appealed, and the case is now here for review.

The contention of the appellant is that the property was exempt from taxation during the controverted years, and that under the evidence, even though it be held that the property was subject to taxation, the decree cannot be sustained. The first contention involves a construction of the constitutional and statutory provisions relative to the exemption of property in this state from taxation. The constitutional provision (art. IX, sec. 2) is: "The property of the state, counties, and municipal corporations, both real and personal, shall be exempt from taxation, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation, but such exemptions shall be only by general law." It is provided by statute (Comp. St. 1903, ch. 77, art. I, sec. 13; Ann St. 10412): "The following property shall be exempt from taxation: First, all property of the state, counties, and municipal corporations. Second, such other property as may be used exclusively for agricultural and horticultural societies, for schools, religious, cemetery and charitable purposes." The construction of these provisions was involved in the case of *Scott v. Society of Russian Israelites*, 59 Neb. 571. The first paragraph of the syllabus in that case is:

"Property used directly, immediately and exclusively for religious purposes is exempt from taxation, without regard to the question of absolute ownership."

Mr. Justice NORVAL, who delivered the opinion of the court, in commenting upon the constitutional and statutory provisions quoted above, said:

"The language of the provisions quoted is plain. There is exempt from taxation all property used exclusively for religious purposes. It is the exclusive use for the purpose named which determines whether the property is subject to the burden of taxation or not."

In support of this contention he quoted largely from *Washburn College v. Commissioners of Shawnee County*, 8 Kan. 344. The law of Kansas is similar to our own, and Mr. Justice Brewer, in the opinion in that case said:

"To bring this property within the terms of the section quoted it must be 'used exclusively for literary and educational purposes.' This involves three things—first, that the property is used; second, that it is used for educational purposes; and third, that it is used for no other purpose."

The conclusion reached in that case was that certain real estate, owned by an educational society, and purchased with a view of thereafter erecting buildings thereon to be used for educational purposes, but not yet improved or used for that purpose, was not exempt from taxation under the laws of Kansas. With the reasoning in that case we agree, and, applying the principle there involved to the case at bar, it seems clear that, from the time the order of the Sisters of Visitation abandoned the property, with the purpose of never again using it for educational and religious purposes, the property was subject to taxation, and taxes might be lawfully levied and assessed thereon.

It is claimed on the part of the appellant that the mortgage was made and allowed to run in reliance upon the exemption of said premises from taxation. His position in that respect is untenable. The mortgagee may have contracted with the mortgagor that the property should continue to be used for educational and religious purposes during the period covered by his mortgage, although the existence of any such agreement or understanding is denied by the sisters having the institution in charge, but such contract cannot avoid the effect of our revenue law, or exempt the property from taxation, except as the contracting parties should keep themselves within the provisions of the statute relative to the exemption of property from taxation. It is argued that the statute invites the investment of money in educational institutions for the public benefit, and exempts such property from taxa-

58

tion, and that, once so invested, the protection of the statute should not be removed until such institution is devoted to other purposes. It is a sufficient answer to say that the protection of the statute has never been removed. The law remains the same, and the appellant, by taking advantage of its privileges, might have continued the property within its terms, but there is no pretense that the appellant, from the time he took possession of the property, ever contemplated using it for religious or educational purposes. On the contrary, the evidence discloses that he held it with a view of some time disposing of it to some one who might use it for that purpose.

The next contention involves two questions. It is averred in the cross-petition that taxes were legally assessed and levied on the property during each of the years in question. The answer to the cross-petition is a general denial, and the only evidence that taxes were in fact levied on the property during those years was the tax lists in the hands of the county treasurer. It is the contention of the appellant that the tax lists are not sufficient evidence that a levy was in fact made. With this contention we cannot agree. A tax list is a public record required to be made by the county clerk, and in which he is required to transcribe the several assessments, and to enter into distinct columns the description of lands and lots and values, and each description of tax, and to apportion the tax among the respective funds to which it belongs according to the number of mills levied for each of said funds, showing a summary of each distinct tax. The tax list, so completed, with the warrant of the clerk attached, is the source of the treasurer's authority to enforce the collection thereof, and is *prima facie* evidence, at least, that levies were made corresponding with the entries therein, and if, as contended by appellant, no such levies were in fact made, it was incumbent upon him to offer some proof to overcome the presumption arising out of the introduction of the tax list in evidence. The case of *Merrill v. Wright*, 41 Neb. 351, cited in support of the contention of the appel-

lant, in so far as it holds that, to uphold the validity of a tax lien sought to be foreclosed, neither the levy nor assessment of taxes will be presumed from the mere introduction in evidence of a treasurer's certificate of purchase at a tax sale, where the existence of such levy and assessment have been put in issue by the answer, is expressly overruled in the case of *Ure v. Reichenberg,* 63 Neb. 899. Furthermore, the exact claim of the appellant is not that no levy was made by the proper authorities, but that no levy was made as against this property, and in support of that contention the fact is cited that at one time there appeared on the tax lists the word "exempt," and that the property was treated as exempt by the county treasurer until the year 1900, when the county treasurer carried forward the amount of the unpaid tax as being delinquent. The question of whether the property was exempt from taxation or not is a question of law, and not one resting in the discretion of a county treasurer. The course followed by the county treasurer in that respect, and the entry of the word "exempt," would at most be mere irregularities, and as against such irregularities the court will regard the amount of the taxes against the property in question, as borne upon the books of the county, as unalterably established.

The remaining question is the right of the county to foreclose its tax lien without having first bid the property in and obtained a tax sale certificate, and it is conceded that this contention is well taken under the authority of *Logan County v. Carnahan,* 66 Neb. 685, unless the right exists by virtue of the provisions of the revenue law of 1903. The provision of the new revenue law under which appellees seek to sustain the decree is found in section 231, article I, chapter 77, Compiled Statutes, 1903 (Ann. St. 10630), and is as follows: "Every county in this state shall have a lien upon each tract or lot of land for all taxes due thereon whether such taxes are for one or more years, or are due to the state, county, township, school district, road district, city, village or other municipal subdivisions

of said county, and may, at any time after such tract or lot of land has been offered for sale for such taxes or any part thereof and not sold for want of bidders, proceed to foreclose said lien and cause said tract or lot to be sold for the satisfaction thereof in the same manner and with like effect as if such lien were a mortgage for the amount thereof executed to said county by the owner of said tract or lot of land." This provision was in force from and after September 1, 1903, and relates solely to the procedure to be adopted by the county to enforce its lien, and was, in our judgment, available to the appellees for the enforcement of the collection of the taxes in question.

We recommend that the judgment of the district court be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.